[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 9, 2009
THOMAS K. KAHN
CLERK

No. 08-13495
Non-Argument Calendar

_____

D. C. Docket No. 05-00062-CV-TJC

ASKARI ABDULLAH MUHAMMAD,
formerly known as
Thomas Knight,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 9, 2009)**

Before ANDERSON, BIRCH and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Askari Abdullah Muhammad, formerly known as Thomas Knight, is a Florida inmate sentenced to death who seeks a certificate of appealability to appeal the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Muhammad has failed to make a substantial showing of the denial of a constitutional right. We deny his application for a certificate of appealability.

## I. BACKGROUND

In 1982, Muhammad was convicted of first-degree murder after fatally stabbing a prison guard while incarcerated and awaiting the death penalty for two previous murders. Muhammad represented himself at trial, and a jury found him guilty. He waived his right to a jury for the penalty phase of trial. The trial judge found three aggravating factors: Muhammad was imprisoned when he committed the murder; he was previously convicted of a capital offense; and the murder was especially heinous, atrocious, or cruel. The judge found no mitigating factors and sentenced Muhammad to death.

Muhammad raised numerous arguments in his direct appeal, three of which are before us in his application for a certificate of appealability: competency, waiver of counsel, and evidentiary rulings related to Muhammad's insanity defense. The Supreme Court of Florida discussed each of these issues when it

2

affirmed Muhammad's conviction and sentence. Muhammad v. State (Muhammad I), 494 So. 2d 969 (Fla. 1986).

The Supreme Court of Florida upheld the finding that Muhammad was competent to stand trial based on the observations by the trial court of Muhammad's behavior and an examination of Muhammad by one expert:

> Muhammad refused to cooperate on three separate occasions with [state experts,] Drs. Barnard and Carrera. Dr. Amin's examination found Muhammad competent. . . . If the court has followed the procedures of the rules and the defendant's own intransigence deprives the court of expert testimony, the court must still proceed to determine competency in the absence of such evidence. The record demonstrates that Judge Carlisle had an opportunity to observe Muhammad's behavior at the competency hearing, to review a letter and various pleadings handwritten by the defendant and a part of the file, and to review the proffer of expert evidence. The proffer indicates Muhammad suffered mental problems, but one need not be mentally healthy to be competent to stand trial. Nothing in the record available to Judge Carlisle dispositively demonstrates Muhammad was incompetent.

Muhammad I, 494 So. 2d at 972–73.

The Supreme Court of Florida upheld the finding that Muhammad was competent to make the decision to waive counsel and found that Muhammad's decision not to pursue an insanity defense was not evidence of incompetency:

> Judge Chance conducted a lengthy and detailed inquiry pursuant to the requirements of Faretta before accepting Muhammad's waiver with this finding: "I personally think you're making a mistake, I really do, but that is your decision. And I'm convinced from talking with you and from the time we spent here today that you're competent and

3

capable to make a mistake." . . . Judge Chance's ruling sums up the dilemma of permitting a defendant to proceed pro se. It also embodies a determination of competency and compliance with the Faretta standard. . . . Muhammad's refusal to cooperate in raising an insanity defense is not itself an indicator of incompetence. The record shows that Muhammad adamantly refused to seek any excuse for the murder based on his mental condition, apparently based on his interpretation of Moslem teachings that he should take responsibility for his actions. Society permits a defendant to seek refuge in an insanity defense; it does not require it.

Id. at 974–75.

The Supreme Court of Florida concluded that Muhammad's hearing to waive counsel, under Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), which occurred less than a month after his competency had been determined, was adequate:

Appellate counsel also argues that the judge should have appointed experts for a determination of competency regarding the waiver and self-representation. Counsel claims Muhammad asked for an examination on this point, but it is clear from the context of his statement that his intention was that Dr. Amin consult with him as a defense expert under Florida Rule of Criminal Procedure 3.216(a), and nothing indicates that Muhammad had changed his position regarding the other experts. Also, the Faretta hearing occurred less than a month after the prior determination of competency to stand trial and nothing in the record suggests that Muhammad's mental condition had changed in the interim necessitating another, most likely futile, attempt at expert evaluation.

Id.

The Supreme Court of Florida also concluded that Muhammad had waived

any objection to the evidentiary rulings of the state court related to his insanity defense:

> [Muhammad] next asserts error in the trial court's ruling that appointed trial counsel would be unable to present any evidence of insanity because of the defendant's refusal to cooperate with the court experts. Subsequent to this ruling, Muhammad filed a pro se motion a month before trial to withdraw the notice of intent to raise the insanity defense. The trial court permitted the state to withdraw its motion to strike the insanity defense and granted Muhammad's motion. Muhammad was competent to make the motion and therefore he has waived any claim of error.

Id. at 976.

In 1989, Muhammad filed for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and argued eighteen grounds for relief. Only three of the arguments raised in Muhammad's 3.850 motion are raised in his application for a certificate of appealability: interference with his right to counsel, his waiver of counsel was equivocal, and suppression of evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). After the trial court determined that all of the claims were procedurally barred because they either had been raised or should have been raised on direct appeal and no cause had been established to excuse the default, the trial court denied the motion. Muhammad appealed, and the Supreme Court of Florida affirmed the dismissal of all but the Brady claim as procedurally barred. Muhammad v. State (Muhammad II), 603 So. 2d 488, 489

5

(Fla. 1992).

As to Muhammad's allegation that the state had suppressed exculpatory evidence, the Supreme Court of Florida remanded for an evidentiary hearing. Id. at 490. On remand, the trial court vacated Muhammad's death sentence and denied all other requested relief. Both Muhammad and the government appealed. The Supreme Court of Florida affirmed the denial of relief as to Muhammad's conviction and reversed the decision to vacate Muhammad's sentence of death. State v. Knight, 866 So. 2d 1195 (Fla. 2003) (per curiam).

The Supreme Court of Florida ruled that Muhammad had failed to prove that he was prejudiced by the alleged suppression of several unsigned statements because they were, at best, cumulative:

> At best, the seven unattributed, unsigned, and undated statements contain limited and conflicting information regarding Muhammad's state of mind around the time of the murder. . . . [T]he information contained in the allegedly suppressed employee statements was cumulative to information from employee depositions. The record reflects that those depositions were turned over to Muhammad, yet he did not use them to present any mental mitigation. Under these circumstances, no likelihood that Muhammad would have used the similar and cumulative information . . . to argue mental mitigation has been established. . . . [T]he nature of the documents that were presented on remand would not require either a new sentencing phase or a new trial.

Id. at 1202–03.

Muhammad also petitioned the Supreme Court of Florida for a writ of

6

habeas corpus and asserted five claims of ineffective assistance of counsel.  One of those arguments is relevant to his application for a certificate of appealability: that ineffective assistance of counsel was "cause" for his failure to raise the argument that the state court had interfered with his standby counsel on direct appeal.  The Supreme Court of Florida denied Muhammad's habeas petition.  Id. at 1205–06.

The Supreme Court of Florida held that Muhammad's argument that the court had interfered with his right to standby counsel would not have been meritorious and any failure to raise the argument on direct appeal was not prejudicial:

> [I]t is clear from the record that Muhammad did not want to appear to have acquiesced to the limited role that his standby counsel was performing.  Moreover, the court took seriously Muhammad's desire not to insinuate that [standby counsel] was providing him any assistance.  Muhammad's decision to not avail himself of his designated standby counsel, even though he was aware [such counsel] was available, was his own, and not the trial judge's decision.

Id. at 1205.

In 2005, Muhammad filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida.  Muhammad alleged ten grounds for relief.  The district court denied the petition.  Muhammad v. McDonough, __ F.Supp. 2d __, No. 3:05-cv-62-J-32, 2008 WL 818812 (M.D. Fla. Mar. 26, 2008).  The district court also denied Muhammad's motion to alter or

7

amend the judgment, and his application for a certificate of appealability. On September 9, 2008, Muhammad filed an application for a certificate of appealability with this Court.

## II. STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY

This Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 326, 123 S. Ct. 1029, 1034 (2003). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).

## III. DISCUSSION

Muhammad requests a certificate of appealability on five of the grounds he stated in the state and district courts. Muhammad argues, first, that he was not competent to stand trial; second, that his rights under Faretta were violated; third,

8

that the trial court abused its discretion when it ruled that he could not present evidence related to insanity; fourth, that the state interfered with his right to consult with counsel; and fifth, that he was denied his right to Brady evidence. We address each issue in turn.

*A. Ground One: Competence To Stand Trial*

Muhammad argues he was not competent to stand trial, but the district court ruled that Muhammad had failed to satisfy his burden of rebutting the finding of competency by the state courts by clear and convincing evidence. Muhammad argues that the state court relied too heavily on Dr. Amin's report, which failed to address Muhammad's longstanding mental illness and refusal to consult with counsel; the state court failed to address that Muhammad was unsure whether to present an insanity defense; and the state court did not consider that Muhammad previously had been found incompetent.

We conclude that Muhammad has failed to establish that jurists of reason would debate the conclusion of the district court. "[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 903 (1975). Whether Muhammad was competent to stand trial is a

9

question of fact. Dr. Amin considered Muhammad's longstanding mental illness, but found Muhammad competent to stand trial because an "examination revealed no overt thought disorder . . . [and Muhammad] demonstrated significant insight and appreciation for his present legal predicament." The state court had before it multiple letters and motions handwritten by Muhammad including a Motion to Proceed in Proper Person and a letter stating his desire to proceed pro se. Although Muhammad refused to speak to counsel, the state court was entitled to find that the refusal was attributable to Muhammad's wish to proceed pro se, not an inability to communicate. It was clearly reasonable for the state court to find that Muhammad's determination not to pursue an insanity defense was likewise not evidence of incompetency.

Although Muhammad argues that the state court failed to consider his brief stay in a mental hospital in 1971, the record reveals that Muhammad was released after a short period and was later confirmed competent by a court. Knight v. Dugger, 863 F.2d 705 app. at 748 (11th Cir. 1988) (appending the denial of habeas corpus by the district court). There was overwhelming psychiatric evidence presented in his first capital trial that Muhammad was not only competent to stand trial, but sane at the time of the murders: "The consensus of those who evaluated the defendant's competency was that he was indeed sociopathic with paranoid

10

personality problems but that he fully knew the difference between right and wrong and could appreciate the seriousness of the crimes with which he had been charged." Id. Muhammad's brief stay in a mental hospital in 1971, after which he was found competent to stand trial for another capital murder, does not create a debatable question about whether Muhammad presented clear and convincing evidence to rebut the finding that he was competent to stand trial in 1982.

Jurists of reason would not debate whether Muhammad had rebutted by clear and convincing evidence the finding by the state courts that Muhammad was competent to stand trial. The trial court had ample opportunity to observe Muhammad and review his handwritten submissions to the court, and the one expert with whom he agreed to speak determined that he was competent. Muhammad has not made a substantial showing of the denial of a constitutional right as to ground one.

*B. Ground Two: Faretta Rights*

Muhammad argues that the state court interfered with his right to standby counsel, his waiver of counsel was equivocal, his Faretta hearing was inadequate, and he was not competent to invoke his Faretta rights and proceed pro se. Only the two latter arguments were raised on direct appeal. The Supreme Court of Florida upheld the finding that Muhammad was competent to make the decision to waive

11

counsel and concluded that his Faretta hearing was adequate. Muhammad argues that the state court should have appointed experts to determine competency and that his uncertainty about whether to pursue an insanity defense was proof of his incompetence to waive counsel. The Supreme Court of Florida affirmed the finding that Muhammad's refusal to invoke a defense of insanity was not evidence of incompetence and affirmed the decision not to appoint experts because there was no evidence Muhammad had "changed his position" regarding his refusal to speak with psychiatric experts. Muhammad I, 494 So. 2d at 975. The district court ruled that these conclusions of the state court were not "contrary to" or "an unreasonable application of . . . clearly established federal law, as determined by the Supreme Court." McDonough, __ F.Supp. 2d__, 2008 WL 818812 at *29.

We conclude that jurists of reason would not debate the denial of Muhammad's petition. In Godinez v. Moran, the Supreme Court held that the standard for determining competency to waive the right to an attorney is the same as the standard for determining competency to stand trial. 509 U.S. 389, 396–97, 113 S. Ct. 2680, 2685–86 (1993). Muhammad appeared for both a competency hearing and a Faretta hearing, and at both, the trial judge was assured of Muhammad's "rational understanding" of the proceedings. Jurists of reason would not debate that Muhammad failed to present clear and convincing evidence to rebut

12

the finding that he was competent to waive his right to an attorney and failed to establish that the decision that his Faretta hearing was adequate was "an unreasonable application of . . . clearly established law."

Muhammad argues that the trial court interfered with his right to standby counsel and that his waiver of the right to counsel was equivocal, but these claims are procedurally barred. Florida law bars claims that could have been raised on direct appeal. Smith v. State, 445 So. 2d 323, 325 (Fla. 1983). To overcome a procedural bar, Muhammad must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).

Muhammad has never provided cause for failing to raise these issues on direct appeal, and he has not been prejudiced by any failure because the arguments would not have been meritorious. As the Supreme Court of Florida stated, Muhammad elected to proceed pro se while simultaneously insisting that he wanted "'assistance of counsel' in the sense of having a lawyer available to aid in preparation of the case." Muhammad I, 494 So. 2d at 970. Each of the three judges who presided over Muhammad's trial heard argument from Muhammad on his motion to proceed pro se, and each time Muhammad expressed a desire to

13

represent himself as well as his wish to have the "assistance of counsel," as opposed to "representation by counsel." The record makes clear that Muhammad unequivocally expressed as follows in a letter to the trial judge an intention to proceed pro se and be aided by standby counsel:

> I believe that assistance of counsel is the assistance of counsel. I believe representation by counsel is representation by counsel. I believe that when I am assisted by counsel, I am being assisted by counsel as I act and speak on my own behalf. I believe that when I am to be represented by counsel, I believe that I am consenting to counsel acting and speaking on my behalf. I believe that the laws and Constitution of the State of Florida and the Constitution of these United States gives me the right to be assisted by counsel.

Muhammad renewed his motion to proceed pro se three times, presented the court with handwritten motions confirming his election to proceed pro se, consistently distinguished being "represented by counsel" from "assisted by counsel," and did not want standby counsel at trial to create the appearance that Muhammad was not representing himself. The record makes clear that Muhammad was unequivocal about his desire to proceed pro se. He has not made a substantial showing of the denial of a constitutional right as to ground two.

### C. Ground Three: Insanity Defense

Jurists of reason also would not debate the reasonableness of the decision that Muhammad waived any objection to the evidentiary rulings about his insanity defense. Muhammad argues that the district court should have considered the

14

reasons he withdrew his notice to pursue the insanity defense, but the reasons for Muhammad's withdrawal are irrelevant. "[W]aiver is the intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993) (internal quotation marks omitted). After a defendant waives a right, there can be no appellate review because there is no error to correct. Id. Muhammad has presented no evidence that his waiver was not knowing or voluntary when he filed the motion to withdraw the notice of his intent to pursue an insanity defense. Muhammad has not made a substantial showing of the denial of a constitutional right as to ground three.

*D. Ground Four: Interference with Pro Se Rights*

Muhammad argues that the state interfered with his "pro se rights" and refers to his right to consult with appointed counsel. Muhammad did not raise on direct appeal the argument that the state interfered with his right to consult with counsel. He first raised this issue in his Rule 3.850 motion. The state court concluded that the claim was procedurally barred, and the Supreme Court of Florida affirmed. Muhammad II, 603 So. 2d at 489. The district court held that the state court had reasonably applied a regularly applied state procedural rule. McDonough, __ F.Supp. 2d__, 2008 WL 818812 at *35.

Jurists of reason would not debate that Muhammad's argument is

15

procedurally barred. Muhammad argues that he has provided cause to excuse his procedural default because evidence of the interference was contained in a sealed appendix unavailable to Muhammad until after his direct appeal. We disagree. Even if Muhammad did not have access to the appendix, Muhammad necessarily knew whether the Florida State Prison had interfered with his right to consult with counsel. Because Muhammad knew whether the prison had allowed him to meet with his attorney in private, he has not established cause for his failure to raise this argument on appeal. Muhammad has failed to make a substantial showing of the denial of a constitutional right as to ground four.

## E. Ground Five: *Brady* Evidence

Muhammad has failed to establish that jurists of reason would debate whether the Supreme Court of Florida reasonably concluded that any suppression by the state, under Brady, was not prejudicial. At oral argument before the Supreme Court of Florida, Muhammad identified the documents that he argued supported his Brady claim, which consisted of a letter from a Department of Corrections investigator with seven attached statements that were unsigned, undated, and unattributed. Knight, 866 So. 2d at 1200–02. The Supreme Court of Florida reasonably concluded that the evidence was cumulative and any alleged suppression was not prejudicial. Muhammad has failed to make a substantial

16

showing of the denial of a constitutional right as to ground five.

## IV. CONCLUSION

Muhammad's application for a Certificate of Appealability is **DENIED**.