PER CURIAM:
Lenard Philmore (“Philmore”), a Florida death row prisoner, appeals the district court’s denial of habeas corpus relief under 28 U.S.C. § 2254. Philmore received the death penalty for the 1997 murder of Kazue Perron, whom he kidnapped and killed in order to use her vehicle for a bank robbery. After careful consideration of all the evidence and the parties’ arguments, we AFFIRM.
I. BACKGROUND
On 14 November 1997, Philmore carjacked at gunpoint a gold Lexus driven by Kazue Perron (“Perron”) in Palm Beach, Florida. Philmore v. State, 820 So.2d 919, 923-24 (Fla.2002) (per curiam). Philmore and his co-defendant Anthony Spann (“Spann”) planned to use the Lexus as the getaway vehicle in a bank robbery. Id. at 923. Spann had previously told Philmore they would have to kill the driver. Id. Philmore drove with Perron to an isolated area, with Spann following behind in a Subaru. Id. at 924. En route, Philmore took Perron’s rings and placed them in the automobile’s armrest. Id. After stopping *1254 at a side road, Philmore ordered Perron to exit the Lexus and walk towards some tall brush. Id. Perron protested and Phil-more shot her once in the head. Id. Phil-more disposed of her dead body in the brush. Id.
Philmore and Spann then drove to a bank in Indiantown. Id. While Spann waited in his Subaru, Philmore robbed a bank teller of $1100. Id. Afterwards, Philmore put on Spann’s shirt and discarded his own tank top by the roadside. Id. Authorities later recovered Philmore’s tank top, which contained Perron’s blood. Id. Philmore and Spann concealed the Subaru and returned to Palm Beach County in the stolen Lexus. Id. Later that day, a West Palm Beach police officer recognized Spann from an outstanding arrest warrant on an unrelated matter. Id. at 924-25. Spann and Philmore led the officer on a high-speed chase until a tire blew out on the Lexus. Id. at 925. The two men abandoned the vehicle and fled into an orange grove. Id. The police captured them and charged them with armed trespass. Id. Firearms were subsequently recovered from a creek in the orange grove. Id.
On 15 November 1997, Detective Gary Bach, who was investigating the Indian-town bank robbery, interviewed Philmore after Philmore agreed to waive his Miranda[1] rights. Id. at 927. Philmore admitted he was in the bank that had been robbed and he was in the Subaru after the bank robbery. Id. The interview ended when Philmore stated he wanted to talk with an attorney first and then speak with Detective Bach again. Id. That same day, Philmore was charged with the bank robbery and was appointed counsel, John Hetherington. Id. at 927 n. 13.
Philmore made a series of statements to the police in Hetherington’s presence from 18 November through 26 November 1997, ultimately confessing to the bank robbery as well as to Perron’s kidnapping and murder. Id. at 927. Philmore also talked to the police during two polygraph examinations without Hetherington being present. Id. Philmore signed a waiver of his Miranda rights before providing each statement. Id. On 21 November, Philmore showed the police where he had disposed of Perron’s body. Id. at 925.
On 16 December 1997, Philmore agreed, in Hetherington’s presence, to tell the grand jury of his involvement in Perron’s abduction and shooting. Id. at 927. Phil-more was indicted that same day for the first-degree murder of Perron, conspiracy to commit robbery with a deadly weapon, carjacking with a deadly weapon, kidnapping, robbery with a deadly weapon, and third-degree grand theft. Hetherington remained Philmore’s counsel until December 1998, when the court appointed Thomas Garland (“Garland”) and Sherwood Bauer to represent Philmore.
In January 2000, a jury convicted Phil-more on all counts. In accordance with the jury’s unanimous recommendation of death, the trial court sentenced Philmore to death for the first-degree murder of Perron; fifteen years of imprisonment for conspiracy to commit robbery with a deadly weapon; life imprisonment for carjacking with a deadly weapon, kidnapping, and robbery with a deadly weapon; and five years of imprisonment for third-degree grand theft. See Philmore, 820 So.2d at 926 n. 10. The Florida Supreme Court affirmed Philmore’s convictions and death sentence on direct appeal. See id. at 940. The Florida Supreme Court subsequently affirmed the denial of Philmore’s motion for post-conviction relief under Florida Rule of Criminal Procedure 3.851, and denied his petition for a writ of habeas cor *1255 pus. See Philmore v. State, 937 So.2d 578, 580 (Fla.2006) (per curiam).
In September 2006, Philmore filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he raised nineteen claims for relief. Following oral argument, the district court denied relief in July 2007. The district court granted a certificate of appealability on all issues but Philmore raises only four claims on appeal: (1) ineffective assistance of counsel by Hetherington; (2) trial court error in granting a peremptory strike, and ineffective assistance of counsel by Garland in not challenging the strike; (3) ineffective assistance of counsel by Garland in not calling Dr. Michael Maher as a witness during the penalty phase to testify that Philmore suffered from an extreme mental or emotional disturbance; and (4) trial court error in ignoring the testimony of Dr. Frank Wood on the issue of whether Philmore qualified for the statutory mitigator of an extreme mental or emotional disturbance.
II. DISCUSSION
When analyzing a district court’s denial of a § 2254 habeas petition, we review de novo questions of law as well as mixed questions of law and fact. See Hannon v. Sec’y, Dep’t of Corr., 562 F.3d 1146, 1150 (11th Cir.2009). In order to obtain federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214 (1996), Philmore must show that the state court decision adjudicating his claims (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedents, or (2) unreasonably determined the facts in light of the evidence presented in the state courts. See id. (citing 28 U.S.C. § 2254(d)). To garner relief under the first prong, the state court’s application of Supreme Court precedent must have been “objectively unreasonable,” not merely incorrect or erroneous. Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (quotation marks and citation omitted). In assessing the second prong, we bear in mind that a state court’s factual findings are presumed correct and may only be rebutted by clear and convincing evidence. See Hannon, 562 F.3d at 1150.
A. Ineffective Assistance of John Hetherington
Philmore contends that Hetherington deprived him of the effective assistance of counsel prior to his being charged for Perron’s murder. According to Philmore, Hetherington actually assisted law enforcement in solving the murder case. Before Hetherington’s appointment, law enforcement knew only that Philmore was involved in a trespass and the Indiantown bank robbery. Philmore contends that, without first conducting any independent investigation or securing a concession, Hetherington foolishly advised Philmore to cooperate with the police and give statements in counsel’s absence. Hetherington’s actions, Philmore maintains, ensured Philmore’s murder conviction and death sentence. Consequently, Philmore asserts that Hetherington’s performance fell not only below the standards of effective counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also below those set forth in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
Philmore first raised a claim of ineffective assistance of counsel against Hetherington in a pretrial motion to suppress Philmore’s incriminating statements. See Philmore, 820 So.2d at 927. Specifically, Philmore contended that Hetherington had deprived him of his Sixth Amendment right to the effective assistance of counsel because Hetherington did not protect Phil-more’s right to remain silent. See Phil- *1256 more, 820 So.2d at 927. Additionally, Phil-more asserted that he did not make his statements freely and voluntarily because he believed that he would not be subject to the death penalty if he gave a full and honest statement. See id. Following an evidentiary hearing at which Hetherington testified, the trial court found that Phil-more’s statements made in counsel’s presence during November 1997 were freely and voluntarily given without any promises, threats, or coercion. See id. However, the trial court granted the motion to suppress with respect to any statements Philmore made in the polygraph room outside of Hetherington’s presence. See id. at 928. The trial court also later denied the motion to suppress in relation to Phil-more’s grand jury testimony on 16 December 1997. See id.
In his direct appeal, Philmore argued that the trial court erred in denying the motion to suppress on grounds that: (1) his statements were not freely and voluntarily given under the Fifth Amendment, and (2) Hetherington had provided ineffective assistance of counsel under the Sixth Amendment in allowing him to make the statements. See id. at 926. The Florida Supreme Court concluded that Philmore’s Fifth Amendment rights had not been violated. See id. at 928. Not only had there been no quid pro quo bargain for Phil-more’s statements, but Philmore had knowingly waived his Miranda rights in writing before giving each statement. See id. The Florida Supreme Court declined to review Philmore’s Sixth Amendment claim at the direct appeal stage, however. See id. Instead, the claim was “denied without prejudice to reraise the claim in a rule 3.850 motion.” See id. at 928-29.
Philmore renewed his claim of ineffective assistance of counsel against Hetherington in a rule 3.851 motion for post-conviction relief. Philmore alleged that Hetherington failed to investigate Phil-more’s case before advising him to give incriminating statements to law enforcement, allowed Philmore to give incriminating statements despite knowing that Phil-more would implicate himself in Perron’s murder, failed to be present with Phil-more during statements given to law enforcement, and failed to secure a plea agreement before Philmore made his incriminating statements. Hetherington again testified at an evidentiary hearing on these claims. After making extensive factual findings concerning counsel’s performance, the state judge concluded that Hetherington was not ineffective under the standards of Strickland.
The Florida Supreme Court agreed. See Philmore, 937 So.2d at 585. The court recited the Strickland standards for demonstrating ineffective assistance of counsel before summarizing the evidence as follows:
At the hearing, Hetherington testified at length regarding his decisions during his representation of Philmore. Although Hetherington could not recall exactly when in the sequence of Philmore’s confessions he learned of specific pieces of information, Hetherington consistently testified that his advice to Philmore to cooperate was based on Philmore’s statements, first that Philmore was not involved in the abduction and then that Philmore was not the shooter. Hetherington also testified that while he views information given by defendants with some skepticism, he believed Philmore because Hetherington had information that Spann was wanted for other murders. After it became apparent that Philmore had lied about his lack of involvement in the abduction, Hetherington admonished Philmore about telling Hetherington the truth. Hetherington believed that Philmore understood the importance of being honest and would no longer be untruthful.
*1257 Hetherington also advised Philmore not to speak with law enforcement officers or submit to polygraph examinations if Philmore was not being candid about his role in Perron’s murder. Philmore nonetheless chose to make statements to law enforcement officers. Philmore presented no evidence to rebut Hetherington’s testimony that Philmore wanted to speak to law enforcement officers even after counsel advised him of the risk. Moreover, Philmore’s first statement to police after Hetherington began representing him was consistent with what Philmore had told Hetherington — that he was not involved in Perron’s abduction or murder. It was Philmore’s spontaneous statement prior to the first polygraph examination that exposed his deceit. The trial court found that even if Hetherington had been present at this time, Hetherington could not have stopped Philmore from admitting that he was present during the abduction. Hetherington testified that after Phil-more’s first confession about his involvement in the abduction, Hetherington had to reevaluate his strategy. Hetherington stated that he believed that if Phil-more was not the shooter, Philmore’s best chance to avoid the death penalty was to present Philmore as a cooperating nonshooter who played a minor role in the felony murder. Once Philmore admitted he was the shooter, Hetherington believed that Philmore had nothing to lose by making additional statements to law enforcement officers.
Id. at 584-85. This evidence supported the trial court’s finding that Hetherington made “ ‘informed, strategic choices, based on the information that Mr. Hetherington had at the time, which were substantially influenced by [Philmore’s] own statements and wishes, which seemed reasonable in consideration of all the facts and circumstances known to Mr. Hetherington at the time each statement was made.’ ” Id. at 585. In a footnote, the Florida Supreme Court added that “[b]eeause we conclude that Philmore has failed to establish that he received ineffective assistance of counsel during police questioning, we decline to address the State’s argument that Phil-more’s Sixth Amendment right to counsel for the murder had not attached at this time.” See id. at 584 n. 6.
We agree with the state courts that habeas relief should be denied on this claim, but for a different reason: Philmore cannot establish a violation of his constitutional right to the effective assistance of counsel prior to his being charged for Perron’s murder because his Sixth Amendment right to counsel as to that offense had not yet attached. Both Stnckland and Cronic, upon which Philmore relies, recognize that the right to the effective assistance of counsel stems from the Sixth Amendment’s right to the assistance of counsel in all criminal prosecutions. See Strickland, 466 U.S. at 686, 104 S.Ct. at 2063 (noting that the Sixth Amendment’s “ ‘right to counsel is the right to the effective assistance of counsel’ ”); accord Cronic, 466 U.S. at 654, 104 S.Ct. at 2044. The Sixth Amendment right is “offense specific” though. McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). “It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.” Id. (quotation marks and citation omitted); see also Rothgery v. Gillespie County, Tex., — U.S. — —, 128 S.Ct. 2578, 2592, 171 L.Ed.2d 366 (2008) (reaffirming that “a criminal defendant’s initial appearance before a judicial officer, where he learns the charge against him and. his liberty is subject to restriction, marks the start of adversary judicial pro *1258 ceedings that trigger attachment of the Sixth Amendment right to counsel”). This rule enforces the purpose of the Sixth Amendment counsel guarantee, which is to protect a suspect “after the adverse positions of government and defendant have solidified with respect to a particular alleged crime.” McNeil, 501 U.S. at 177-78, 111 S.Ct. at 2208-09 (quotation marks and citation omitted). Accordingly, the Supreme Court held in McNeil that the Sixth Amendment right to counsel “poses no bar to the admission of the statements” made in connection to offenses for which the suspect had not been charged, despite the attachment of the Sixth Amendment right on unrelated charged offenses. Id. at 176, 111 S.Ct. at 2208.
The McNeil rule applies even in situations where, as here, the charged and uncharged offenses are factually related. See Texas v. Cobb, 532 U.S. 162, 167-68, 121 S.Ct. 1335, 1340-41, 149 L.Ed.2d 321 (2001). The defendant in Cobb was charged only with burglary at the time he confessed to murdering a woman and her young daughter during his commission of that burglary. See id. at 165-66, 121 S.Ct. at 1339. The Supreme Court explained that McNeil’s offense-specific definition does not include an exception for uncharged crimes that are factually related to those that have actually been charged. See id. at 168, 121 S.Ct. at 1340-41. However, the Court clarified that “when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the Blockburger test.” Id. at 173, 121 S.Ct. at 1343. Blockburger states that “ ‘where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.’ ” Id. (quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). Since burglary and capital murder required proof of different facts under Texas law, they were not the same offense under Blockburger. Id. at 174, 121 S.Ct. at 1344. Accordingly, the Supreme Court concluded that “the Sixth Amendment right to counsel did not bar police from interrogating respondent regarding the murders, and respondent’s confession was therefore admissible.” Id.
The principles enunciated in McNeil and Cobb dictate the result here. During the time period that Hetherington’s representation was allegedly deficient, Philmore had been charged only with armed trespass and the Indiantown bank robbery. There had been no formal charge, preliminary hearing, indictment, information, or arraignment against Phil-more for his involvement in Perron’s murder. Under the Blockburger test, the crimes of armed trespass and third-degree grand theft are different offenses from first-degree murder because they require proof of different facts. Compare Fla. Stat. Ann. § 810.09(l)(a)l, (2)(c) (1997) (requiring entry with a firearm or other dangerous weapon onto property as to which notice against entering was posted or otherwise communicated) with § 812.014(2)(c)l (requiring the unlawful taking of another’s property valued at $300 or more but less than $5000) and § 782.04(l)(a)l (requiring a premeditated design to effect a person’s death). Hetherington’s challenged representation therefore occurred before Philmore’s Sixth Amendment right to counsel had attached with respect to Perron’s murder. See Cobb, 532 U.S. at 173, 121 S.Ct. at 1343; McNeil, 501 U.S. at 175, 111 S.Ct. at 2207. Absent a Sixth Amendment right to counsel, there can be no violation of the Sixth Amendment right to the effective assis *1259 tance of counsel. Accordingly, Philmore’s claims against Hetherington must fail.
Nor can Philmore rely on the right to counsel connected to the Fifth Amendment’s protection against self-incrimination. Other than a cursory allegation of a Fifth Amendment deprivation, Philmore makes no argument and provides no citation of authority as to how this right was violated. Consequently, Philmore has abandoned this claim.[2] See Flanigan’s Enter., Inc. of Ga. v. Fulton County, Ga., 242 F.3d 976, 987 n. 16 (11th Cir.2001) (per curiam) (stating that the failure to “elaborate or provide any citation of authority in support of’ an allegation in a brief results in the waiver of that argument).
Even if Philmore had not waived this claim, we find it lacking in merit. The Fifth Amendment’s guarantee against self-incrimination includes the prophylactic right to have counsel present during custodial interrogation. See McNeil, 501 U.S. at 176, 111 S.Ct. at 2208. “Once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present.” Id. at 177, 111 S.Ct. at 2208. Thus, unlike the Sixth Amendment right to counsel, this rule is “not offense specific.” Id. In Phil-more’s case, once he requested an attorney during his initial interview as to the bank robbery, Hetherington was appointed as his attorney and remained present during Philmore’s discussions with law enforcement agents about Perron’s abduction and murder. Any statements made by Phil-more outside of counsel’s presence during the polygraph examinations were excluded by the trial court. See Philmore, 820 So.2d at 928. Accordingly, the Fifth Amendment provides no basis for habeas relief.
Based on the foregoing, we affirm the denial of habeas relief as to Philmore’s claims of ineffective assistance of counsel against Hetherington.
B. Batson Violation and Trial Counsel’s Effectiveness in Challenging a Peremptory Strike
Next, Philmore asserts that the trial court erred in granting the state’s peremptory strike of a prospective black juror, Tajuana Holt (“Holt”). According to Philmore, the state failed to articulate a genuine, race-neutral explanation as required by Batson v. Kentucky, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Furthermore, Philmore asserts that his trial counsel did not effectively challenge the strike. Had counsel done so, Philmore contends there is a reasonable probability that Holt could have swayed the entire jury to vote for life imprisonment.
Holt stated in her jury questionnaire that “I feel that people shouldn’t get the death penalty. Just let them stay in prison for the rest of their lives.” Philmore, 820 So.2d at 929. During voir dire, however, Holt stated that the death penalty may be appropriate in some cases. See id. The prosecutor offered three reasons for peremptorily striking Holt: (1) Holt’s answers in her questionnaire differed from her responses during voir dire; (2) Holt’s mother, who was a managing clerk in the trial judge’s division, had advised the prosecution that it would do better without her daughter on the jury; and (3) the prosecutor thought Holt was sleeping throughout voir dire. See id. at 929-30. Based on the variance between Holt’s answers to the jury questionnaire and her responses during voir dire, the trial court concluded that *1260 the government’s explanation was facially race neutral and therefore granted the peremptory strike. See id. at 930. Phil-more’s counsel, Garland, objected to the strike but did not renew the objection before the jury was sworn. See id.
The Florida Supreme Court decided on direct appeal that Philmore’s Batson claim had been waived because his trial counsel failed to renew his objection to the peremptory strike before the jury was sworn. See id. The Florida Supreme Court cited several cases where this procedural default rule had been regularly applied under Florida law. See id. The Florida Supreme Court alternatively ruled that “even if this claim was not procedurally barred, it has no merit because the State has advanced a facially race-neutral non-pretextual reason for peremptorily challenging Holt.” Id. In Philmore’s post-conviction proceedings, the Florida Supreme Court reiterated that the substantive issue of the strike’s validity was procedurally barred. See Philmore, 937 So.2d at 585.
We are precluded from considering Phil-more’s Batson claim because “the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar.” Parker v. Sec’y for the Dep’t of Corr., 331 F.3d 764, 771 (11th Cir.2003) (quotation marks and citation omitted). A federal habeas claim may not be reviewed on the merits where a state court determined, as here, that the petitioner failed to comply with an independent and adequate state procedural rule that is regularly followed. See Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir.2006). We must abide by the Florida Supreme Court’s decision, even though the court made an alternative merits ruling. See Parker, 331 F.3d at 774-75 (explaining that “an alternative merits holding leaves the procedural bar in place”).
Furthermore, Philmore does not argue that there is any cause or prejudice to excuse his procedural default. See Siebert, 455 F.3d at 1272. The requisite cause “ordinarily turns on whether the prisoner can show that some objective factor external to the defense impeded counsel’s efforts to comply with the State’s procedural rule.” Id. (quotation marks and citation omitted). In the absence of any argument or evidence that cause and actual prejudice exists, we conclude that Philmore fails to satisfy this equitable exception to the procedural bar doctrine.
We therefore turn to the issue of trial counsel’s effectiveness in challenging the strike. Strickland requires a petitioner to show both that his counsel’s performance was deficient, and that the deficiency prejudiced his defense. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. A deficient performance means that counsel “made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Id. An attorney’s actions need only fall within “the wide range of professionally competent assistance” to pass constitutional muster. Id. at 690, 104 S.Ct. at 2066. Moreover, appellate courts should not second-guess counsel’s assistance. Id. at 689, 104 S.Ct. at 2065. “Even the best criminal defense attorneys would not defend a particular client in the same way.” Id.
To counteract the distorting effects of hindsight, the petitioner bears the burden of overcoming a strong presumption that the challenged action is sound trial strategy. Id. That presumption may be rebutted if the petitioner establishes “that no competent counsel would have taken the action that his counsel did take.” Haliburton v. Sec’y for the Dep’t of Corr., 342 F.3d 1233, 1243 (11th Cir.2003) (quotation marks and citation omitted). In order to establish prejudice, the petitioner must *1261 show a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. We need not analyze the prejudice prong if a defendant fails to establish deficient performance, or vice versa. See Porter v. Att’y Gen., 552 F.3d 1260, 1269 (11th Cir.2008) (per curiam).
We agree with the Florida Supreme Court that Philmore cannot establish any prejudice from his attorney’s performance given its previous alternative holding that the strike was facially race-neutral and non-pretextual. See Philmore, 937 So.2d at 585. Aside from the lack of prejudice, we also conclude that counsel was not deficient. Philmore contends that trial counsel failed to challenge the strike. To the contrary, Garland objected to the state’s peremptory strike on grounds that it was race-based, and objected to the statement of the prospective juror’s mother as being hearsay. Philmore argues that his attorney should have determined what questions the prosecution asked Holt’s mother and whether the state had questioned family members of prospective white jurors. Such information would have made little difference, however, because the trial court based its decision on the prosecution’s first reason for the strike — namely, the differences in Holt’s answers regarding the death penalty. Accordingly, Phil-more has failed to show that his counsel’s performance fell outside “the wide range of reasonable professional assistance,” or a reasonable probability that, but for his attorney’s actions, the result of the proceeding would have been different. Strickland, 466 U.S. at 689, 694, 104 S.Ct. at 2065, 2068. The district court correctly denied habeas relief on this claim.
C. Trial Counsel’s Effectiveness During The Penalty Phase
Philmore asserts that his counsel was ineffective in failing to call Dr. Michael Maher as a witness during the penalty phase to testify that Philmore’s organic brain damage supported the statutory mitigator of an extreme mental or emotional disturbance. During the guilt phase of the trial, the state had impeached Philmore’s expert witness, Dr. Robert Berland, based on his use of an outdated medical test to evaluate Philmore’s brain injüry. Phil-more contends that because of this impeachment, it was imperative that Garland utilize Dr. Maher as a witness. If Dr. Maher had testified about this statutory mitigator, Philmore submits the outcome of the penalty phase would have been different.
Dr. Maher testified at a 1999 deposition and a 2004 state post-conviction evidentiary hearing. In his deposition, Dr. Maher, a psychologist, stated that during his interview of Philmore, Philmore “fully and completely” accepted responsibility for his actions and admitted being a “willing participant” in the crimes. Rl-13, Accordion Folder 8, Exh. C-10, Vol. X, at 1439. Philmore’s version of the events to Dr. Maher comported with his statements to the police. Dr. Maher believed these statements were factually accurate and that Philmore “was engaged in his usual pattern of criminal activity” when the crimes occurred. Id. at 1440.
At the 2004 evidentiary hearing, Dr. Maher testified that a brain scan showed Philmore had an abnormality in the frontal lobes of his brain which caused Philmore to act impulsively. Dr. Maher admitted that he did not view Philmore’s killing of Perron as an entirely impulsive act, however. Additionally, Dr. Maher testified that although Spann influenced Philmore, Dr. Maher was unable to conclude that Phil- *1262 more had acted under the substantial domination of another. If Dr. Maher had been called at trial, he stated he would have testified that Philmore qualified for two other statutory mitigators: (1) extreme mental or emotional disturbance, and (2) substantial impairment of the capacity to appreciate the criminality of his conduct.
The state post-conviction judge found that Garland spoke with Dr. Maher on several occasions and reviewed Dr. Maher’s deposition and report. After consulting with co-counsel, Garland decided not to call Dr. Maher as a witness because he did not believe that Dr. Maher would add anything to Philmore’s case. The state judge further found that Dr. Maher’s opinion would have conflicted with two defense experts, Dr. Frank Wood and Dr. Berland. According to Dr. Maher, Philmore suffered brain damage in his frontal lobe, whereas Dr. Wood testified at trial that Philmore’s brain abnormality was located towards the back section. In addition, Dr. Maher would have been unable to support Dr. Berland’s testimony that Philmore was under the substantial domination of his co-defendant, Spann.
The Florida Supreme Court concluded that Philmore had failed to demonstrate either deficient performance or prejudice under Strickland. See Philmore, 937 So.2d at 586-87. Dr. Maher’s opinions would have partially contradicted those of the other defense experts, whose credibility had already been undermined by the state’s expert. Id. at 586. It was therefore reasonable for trial counsel not to present conflicting expert opinions. See id. Moreover, the Florida Supreme Court determined that the record supported the trial court’s finding that Garland made a tactical decision not to call Dr. Maher. “Although Garland did not explain with specificity his reasons for not utilizing Dr. Maher, Garland clearly considered this alternative and rejected it.” Id. at 587. Besides failing to establish any deficiency, Philmore also failed to establish any prejudice. See id. Garland had presented mitigation evidence through two experts and several lay witnesses. Given that both of those experts’ testimony were impeached by the state, the Florida Supreme Court reasoned that the state could have successfully challenged Dr. Maher’s opinions as well. See id. Consequently, the Florida Supreme Court concluded that trial counsel was not ineffective in this matter. See id.
The state courts reasonably determined the facts from the record and reasonably applied Strickland in evaluating counsel’s effectiveness. The evidence establishes that trial counsel investigated the possibility of utilizing Dr. Maher but ultimately determined that Dr. Maher’s testimony was not necessary. Even though counsel did not elaborate further on his reasons, Philmore bore the burden of rebutting the strong presumption that counsel exercised reasonable professional judgment. See Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (“ ‘[Wjhere the record is incomplete or unclear about [counsel’s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.’ ”). This presumption of reasonableness was supported by evidence that Dr. Maher differed on key issues from the other defense experts. In addition to the inconsistencies noted by the state courts, Dr. Maher conflicted with Dr. Berland as to whether Philmore had an impaired capacity to appreciate the criminality of his conduct. Specifically, Dr. Berland testified at trial that Philmore “could appreciate the criminality of his conduct” and “knew what he was doing was wrong.” Rl-13, Accordion Folder 4, Exh. A-23, Vol. XXIII, at 2138-39. Dr. Maher believed the opposite, opining that Philmore’s capacity to appreciate the criminality of his conduct was substantially im *1263 paired. This difference in opinion would have weakened the credibility of both experts.
Furthermore, Garland was not obligated to use Dr. Maher merely because Dr. Maher might have bolstered Dr. Berland’s impeached testimony with respect to the mitigator of an extreme mental or emotional disturbance. Counsel has no absolute duty to present all mitigating evidence, even if the additional evidence would have been compatible with counsel’s strategy. See Chandler, 218 F.3d at 1319. “Considering the realities of the courtroom, more is not always better.” Id. Rather, Garland’s duty at the penalty phase was to investigate possible mitigating factors and make a reasonable effort to present mitigating evidence. See McClain v. Hall, 552 F.3d 1245, 1250 (11th Cir.2008). Garland fulfilled that duty here. Philmore has not shown that counsel’s decision in this matter was constitutionally deficient.
Nor has Philmore demonstrated any prejudice. To show prejudice, Philmore must establish a reasonable probability that “absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. at 2069. This is not a situation where trial counsel failed to present any mitigating evidence. As the Florida Supreme Court found, two experts and several lay witnesses testified at the penalty phase in support of mitigation. See Philmore, 937 So.2d at 587. The trial court found several nonstatutory mitigators based in part on Philmore’s abusive childhood, his history of drug and alcohol abuse, his cooperation with the state, and his expressed remorse for killing Perron.
See Philmore, 820 So.2d at 925-26. These mitigating factors were outweighed by five aggravating circumstances, however, which included that Philmore committed the capital felony for pecuniary gain and did so in a cold, calculated, and premeditated manner.[3] See id. at 925. Philmore has not demonstrated a reasonable probability that the addition of a third expert, who would have offered partially inconsistent opinions with the other defense experts, would have tilted the scales in favor of a life sentence.
Accordingly, the state courts reasonably determined that counsel’s decision not to utilize Dr. Maher during the penalty phase was neither deficient nor prejudicial.
D. Trial Court Error in Rejecting the Statutory Mitigator of Extreme Mental or Emotional Disturbance
Philmore contends in his final argument that the trial court ignored Dr. Frank Wood’s testimony during the penalty phase, which purportedly establishes the statutory mitigator of an extreme mental or emotional disturbance. Philmore bases his argument on the sentencing order, which made no mention of Dr. Wood and focused instead on the state’s impeachment of Dr. Berland. According to Philmore, the trial court ignored the school records, physical exam, and brain imaging scan results that Dr. Wood relied upon to establish Philmore’s brain damage. Phil-more submits that the trial court’s failure to consider this evidence violated Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982), in which the Supreme Court held that a sentencing court may not refuse to consider, as a matter of law, any relevant mitigating evidence. Philmore acknowledges that the *1264 Florida Supreme Court denied habeas relief on this claim because it was not raised on direct appeal, yet he maintains that this was due to ineffective assistance of appellate counsel.
The Florida Supreme Court found that Philmore’s claim that the trial court erred in failing to consider Dr. Wood’s testimony was procedurally barred. See Philmore, 937 So.2d at 588. Although Philmore’s attorney argued on direct appeal that the trial court erred in rejecting the statutory mitigator of an extreme mental or emotional disturbance, appellate counsel did not raise a separate claim that the trial court erred in failing to consider Dr. Wood’s testimony. See id. Thus, the claim was procedurally barred because it could have been raised on direct appeal. See id.
The Florida Supreme Court also rejected Philmore’s attempt to raise the issue as a claim of ineffective assistance of appellate counsel. See id. The trial court thoroughly considered whether to apply the statutory mitigator of an extreme mental or emotional disturbance, and the Florida Supreme Court previously concluded on direct appeal that the trial court’s rejection of this mitigator was “supported by competent, substantial evidence.” Id. Phil-more’s habeas claim was “merely an additional argument in support of the claim previously raised on direct appeal.” Id. Accordingly, the Florida Supreme Court concluded that Philmore’s claim of ineffective assistance of appellate counsel lacked merit. See id.
Florida law bars claims in a state post-conviction proceeding that could have been raised on direct appeal. See Muhammad v. Sec’y, Dep’t of Corr., 554 F.3d 949, 956-57 (11th Cir.2009). “[A] habeas petitioner who has failed to meet the State’s procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.” Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (quotation marks and citation omitted). Accordingly, before a federal habeas court may consider the merits of a procedurally defaulted claim, a petitioner “must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.” Muhammad, 554 F.3d at 957 (quotation marks and citation omitted). An attorney’s constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute “cause” to excuse a procedural default. Edwards, 529 U.S. at 451, 120 S.Ct. at 1591; accord Payne v. Allen, 539 F.3d 1297, 1314 (11th Cir.2008) (“Thus, to determine cause and prejudice, we must ascertain whether Payne has shown ineffective appellate counsel in not timely raising his ineffective-trial-counsel claims.”).
Here, the Florida Supreme Court correctly determined that Phil-more’s habeas claim was procedurally defaulted because Philmore could have but did not specifically raise it on direct appeal. See Philmore, 937 So.2d at 588. To excuse his procedural default, Philmore asserts that his appellate counsel, Patrick C. Rastatter, was ineffective in not raising the claim on direct appeal. Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir.1991). In assessing an appellate attorney’s performance, we are mindful that “the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.” Id. at 1130-31. Rather, an effective attorney will weed out weaker arguments, even though they may have merit. See id. at 1131. In order to establish prejudice, we must first review the *1265 merits of the omitted claim. See id. at 1132. Counsel’s performance will be deemed prejudicial if we find that “the neglected claim would have a reasonable probability of success on appeal.” Id.
The omitted claim in this ease was closely related to the claim raised by Philmore’s appellate counsel on direct appeal. Counsel asserted on direct appeal that “[t]he trial court erred in failing to find that the capital felony was committed while [Phil-more] was under the influence of extreme mental or emotional disturbance.” Rl-13, Accordion Folder 5, Exh. A-31, Initial Brief of Appellant at 91. In support of this argument, appellate counsel recounted Dr. Wood’s review of Philmore’s brain imaging scan and school records, and Dr. Wood’s opinion that Philmore’s brain injury caused his abnormal behavior. Appellate counsel then argued that the sentencing court erroneously dismissed the expert mental health findings of both Dr. Wood and Dr. Berland in rejecting the mitigating circumstance of an extreme mental or emotional disturbance. This argument is very similar to the omitted claim now raised in the instant habeas petition — that the trial court erroneously ignored Dr. Wood’s testimony in rejecting the mitigating circumstance of an extreme mental or emotional disturbance. Both claims focus on the same underlying issue, the applicability of the statutory mitigator of an extreme mental or emotional disturbance.
In light of its determination on direct appeal that this statutory mitigator did not apply, the Florida Supreme Court correctly concluded that Philmore did not receive ineffective assistance of appellate counsel. The omitted claim relies on the same facts and challenges the identical trial court decision that was affirmed on direct appeal. Appellate counsel’s failure to challenge that decision under a different legal theory cannot be considered deficient performance, especially given that counsel raised eleven other enumerations of error in a one-hundred page brief. Compare Heath, 941 F.2d at 1131 (concluding that appellate counsel in death penalty case was deficient in raising only one issue in a six-page argument). Nor can Philmore establish any prejudice from his attorney’s omission since the Florida Supreme Court already concluded that “the trial court’s rejection of this statutory mitigator is supported by competent substantial evidence.” Phil-more, 820 So.2d at 937. Accordingly, the Florida Supreme Court reasonably rejected Philmore’s claim of ineffective assistance of appellate counsel.
As Philmore has failed to show cause and prejudice to excuse his procedural default, we may not review the merits of his defaulted claim. See Edwards, 529 U.S. at 451, 120 S.Ct. at 1591. No exception to this rule applies here as Philmore does not assert that our failure to review his claim will result in a fundamental miscarriage of justice. See id. We therefore affirm the district court’s denial of habeas relief on this issue.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s judgment denying habeas relief.
AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. For the same reason, Philmore has abandoned his claims that Hetherington’s representation deprived him of his Fourth, Eighth, and Fourteenth Amendment constitutional rights.

. The trial court also found the remaining three aggravators: (1) Philmore was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; (2) the capital felony was committed during a kidnapping; and (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest. See Philmore, 820 So.2d at 925.