[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14373
_____

D.C. Docket No. 9:16-cv-80542-RLR


ANTON TUOMI,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 13, 2020)

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Anton Eric Tuomi, a Florida prisoner, is serving a 15-year minimum-mandatory term of imprisonment after a jury convicted him of aggravated battery, in violation of Florida Statute § 784.045(1)(a)(1).  He appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition and obtained a certificate of appealability from this Court on whether the district court erred in concluding that: (1) Tuomi was not denied his right to counsel when the state court accepted Tuomi's motion to withdraw his guilty plea without first appointing him new counsel or providing him an opportunity to confer with counsel; (2) Tuomi's appellate counsel was not ineffective for failing to argue that Tuomi had been denied his right to counsel before withdrawing his guilty plea; and (3) Tuomi's appellate counsel was not ineffective for failing to raise a claim that Tuomi did not knowingly and voluntarily waive his right to counsel, in violation of *Faretta v. California*, 422 U.S. 806 (1975).  After careful review and with the benefit of oral argument, we affirm.

## I.  Background

In 2010, Tuomi was charged with felony battery and criminal mischief.  On the morning his trial was to set begin, he entered a negotiated guilty plea in exchange for a sentence of two years' imprisonment.  After judgment was entered in his case, Tuomi's counsel filed a motion to withdraw the guilty plea, to withdraw from representation, and to appoint conflict-free counsel, pursuant to

2

Florida Rule of Criminal Procedure 3.170(1),[1] alleging that Tuomi's plea was involuntary and that she had misled Tuomi.  Specifically, counsel asserted that she advised Tuomi to accept the negotiated plea offer of two years' imprisonment based on an incorrect criminal punishment scoresheet, and under the correct scoresheet, Tuomi would have been subject to no longer than one year of imprisonment.  Counsel asserted that she was ineffective for failing to advise Tuomi that the scoresheet was incorrect and in failing to advise him that he should not be subject to more than one year of imprisonment.  She asserted that an evidentiary hearing was required, that the nature of the allegations under Florida law required her to withdraw as counsel, and that Tuomi was entitled to relief.[2]

At the hearing on the motion, Tuomi's counsel advised the court that Tuomi had the right to withdraw his plea because he had accepted the plea based on an incorrect scoresheet and, under a correct scoresheet, he likely would not have been

---

[1] Fla. R. Crim. P. 3.170(*l*) provides that "[a] defendant who pleads guilty or nolo contendere without expressly reserving the right to appeal a legally dispositive issue may file a motion to withdraw the plea within thirty days after rendition of the sentence, but only upon the grounds specified in Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(a)–(e) except as provided by law."  The grounds specified in Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii) include an involuntary plea.  Fed. R. App. P. 9.140(b)(2)(A)(ii)(c).

[2] Meanwhile, Tuomi filed his own *pro se* motion to withdraw plea, asserting that his counsel was ineffective and that she "coerced" him into accepting the plea offer based on the incorrect scoresheet.  The trial court denied Tuomi's *pro se* motion to withdraw plea, concluding that he "understood he was facing five years in prison and chose to accept a two year sentence in lieu of risking the five years.  He received the benefit of the bargain and should not be allowed to withdraw his plea.  The scoresheet is correct."

subject to more than a year of incarceration.[3]  The prosecutor responded that, while she did not necessarily agree that the plea should be vacated, she believed the best thing to do would be to appoint new counsel for Tuomi and hold an evidentiary hearing to determine whether his plea was voluntary or not.  The court permitted Tuomi to address the court.  Tuomi stated that he was "coerced" and "under duress" when he entered the negotiated plea and "wasn't really quite aware of . . . the proper sentence."  The court then asked Tuomi "[s]o you want to have your trial now?" and Tuomi stated "I would love to have another trial, Your Honor."  The prosecutor then advised the court that, if the plea were withdrawn, the state would amend the charge to aggravated battery and Tuomi would be facing a 15-year mandatory-minimum sentence.  The prosecutor also stated that the "plea offer had nothing to do with the scoresheet," and that the state was going to seek a prison sentence regardless of the scoresheet because of Tuomi's "violent history."  The trial court asked the prosecutor whether the state wanted to have an evidentiary hearing on Tuomi's motion regarding the voluntariness of his plea or "just have a trial with this fellow," and the prosecutor stated "[l]et's just have a trial."  Accordingly, the trial court granted Tuomi's counseled motion to withdraw his plea and ordered that new counsel be appointed to represent him.

---

[3] Counsel stated that she advised Tuomi that, even under a correct scoresheet, it was still possible for him to face more than a year of imprisonment if he scored higher than 22 points, but that Tuomi wished to proceed with the withdrawal of the plea anyway.

4

After the plea was vacated, the prosecutor filed an amended information charging Tuomi with aggravated battery and criminal mischief. Tuomi's newly appointed counsel filed a motion to withdraw based on a conflict of interest. The trial court granted the motion and appointed new counsel. Shortly thereafter, Tuomi filed a *pro se* request to discharge this counsel and requested that the trial court "appoint co[-]counsel to aid Mr. Tuomi and his defense as pro se lawyer."[4]

Tuomi also filed a handwritten "waiver of representation by counsel," asserting that he had diligently investigated the case, was ready for trial, and would be representing himself. A few weeks later, he filed an amended waiver of representation, averring that he did not suffer from any mental illness and was competent to represent himself at trial. The trial court ultimately granted the motion to withdraw counsel and entered an order stating that Tuomi would represent himself "at his request."

Tuomi therefore proceeded to trial without counsel. Prior to *voir dire*, the trial court conducted the following colloquy with Tuomi:

> THE COURT: [] I am required by law to talk to you a little bit about your choice to have a trial without a lawyer.
>
> MR. TUOMI: Uh-huh, Faretta?
>
> THE COURT: Pardon me?

---

[4] His newly appointed counsel also filed a motion to withdraw asserting that he was not on the court-appointed attorneys list and was declining appointment for the case.

5

MR. TUOMI: It's called Faretta?

THE COURT: Right.  Yeah, so a lawyer, as you know, has the experience and knowledge of the entire process, and the lawyer's job would be to argue for your side and present your best legal argument. Jury—what we're about to start is the jury qualification procedure, and they usually have—the lawyers usually have a desire or a thought about—the good ones, anyway, they have what type or person they think would be best for your case, so you—that's what you should think about, and we're going to ask these jurors questions about what they do for a living and what—you know, that sort of thing, personal information about them and go over some legal principles with them. So when I'm questioning them and when the other lawyer is questioning them, you should be looking at them and deciding, "Is this a juror that I think would be sympathetic to my situation or not," and—you know, so you will have the ability to—for six people, have the ability to say, "I don't want this person, that person," six of them, you get six peremptory challenges, we call them.  Do you understand?

MR. TUOMI: Okay.

THE COURT: In other words, you can bump six of them. Do you have a list there of their names?

MR. TUOMI: Yes.

THE COURT: Okay.  You can write little information about them, whether you like them—you know, "This person is a plus person for me or a minus," on that sheet.  A lawyer would know how to do that; a lawyer can also, of course, get witnesses here and question the witnesses and question other people and give you some advice about whether they think you should testify or not.  They know when—they have the rules of evidence, and so they know when to object and that[] sort of thing."

MR. TUOMI: Right.

THE COURT: So that's the—you know, we lawyers—I'm a lawyer too, obviously—we always think it's a bad idea not to have a lawyer, but you have convinced me previously that you know about the

6

system somewhat and that you are sincere in your desire to do it yourself, so—and we fired your lawyer, I guess, at your request, but—so I just want to make sure you're ready to continue.

MR. TUOMI: Yes.

The State then reviewed the charges against him and what the State believed the evidence would prove, and Tuomi stated "[i]t's up to the jury." Following the trial, the jury convicted Tuomi of aggravated battery.[5] Tuomi was sentenced to a minimum-mandatory term of 15 years' imprisonment as a prison releasee reoffender.[6] Tuomi appealed, and Florida's Fourth District Court of Appeal summarily affirmed without explanation.

Tuomi then filed a *pro se* Florida Rule of Criminal Procedure 3.850 motion for postconviction relief, arguing, among other things, that he was denied his Sixth Amendment right to have conflict-free counsel in connection with his motion to withdraw his plea. The trial court summarily denied Tuomi's Rule 3.850 postconviction motion, concluding that his claims were "conclusively refuted by the facts and Exhibits in the State's response." Tuomi appealed and Florida's Fourth District Court of Appeal affirmed without written opinion.

---

[5] The trial court granted Tuomi a judgment of acquittal on the criminal mischief charge.

[6] Because he was a prison releasee reoffender, the trial court was required to impose a 15-year sentence. *See* Fla. Stat. § 775.082(9)(a)(3)(c) (2010).

Thereafter, Tuomi filed a *pro se* state habeas petition with Florida's Fourth District Court of Appeal, pursuant to Florida Rule of Appellate Procedure 9.141(d), asserting, as relevant here, that his appellate counsel was ineffective for not raising the following issues on direct appeal: (1) that he was denied his Sixth Amendment right to counsel when the trial court failed to appoint conflict-free counsel to represent him on his motion to withdraw his plea, and (2) that Tuomi did not knowingly and voluntarily waive his right to counsel at trial, in violation of *Faretta*. The court summarily denied the habeas petition.

In 2016, Tuomi filed the underlying § 2254 federal habeas petition, asserting, among other claims, that the state court erred in denying his substantive conflict-free counsel claim and his ineffective-assistance-of-appellate-counsel claims. A magistrate judge issued a report and recommendation ("R&R"), recommending that the § 2254 petition be denied, which the district court adopted. This appeal followed.

## II.  Legal Standards

"We review *de novo* the legal conclusions reached by the district court in denying [a] § 2254 petition. We review the district court's factual findings for clear error, and mixed questions of law and fact *de novo*." *Hill v. Humphrey*, 662 F.3d 1335, 1343 n.9 (11th Cir. 2011) (en banc). "An ineffective-assistance-of-

8

counsel claim presents a mixed question of law and fact, which [we] review[] *de novo*." *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009).

Under 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), after a state court has adjudicated a claim on the merits,[7] a federal court may grant habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2). Thus, under AEDPA, "our review of a final state habeas decision is 'greatly circumscribed and is highly deferential to the state courts.'"  *Hill*, 662 F.3d at 1343 (quoting *Payne v. Allen*, 539 F.3d 1297, 1312 (11th Cir. 2008)).

Clearly established federal law consists of the governing legal principles set forth in the decisions of the Supreme Court at the time the state court issues its decision.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010).  A decision is contrary to clearly established federal law if the state court either (1) applied a rule that contradicted the governing law set forth by the Supreme Court, or (2) "reach[ed] a different result from the Supreme Court 'when faced with

---

[7] A state court's summary adjudication of a petitioner's claim without an accompanying statement of reasons, such as in this case, is an adjudication on the merits and is entitled to deference.  *See Harrington v. Richter*, 562 U.S. 86, 99–100 (2011).

materially indistinguishable facts.'" *Id*. (quoting *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2003)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner. *Brown v. Payton*, 544 U.S. 133, 141 (2005). The "unreasonable application" inquiry requires that the state court decision be more than incorrect or erroneous—it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In other words, the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1987). *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009). Thus, a defendant must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Id.* at 697.

"In assessing an appellate attorney's performance, we are mindful that 'the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.'" *Philmore*, 575 F.3d at 1264 (quoting *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991)).  Thus, "[appellate] [c]ounsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'" *Id.* at 1265 (quoting *Heath*, 941 F.3d at 1132).

Further, because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal citations and quotations omitted).  Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*  With these principles in mind, we turn to the three issues upon which we granted a COA.

## III.  Discussion

**A.    Whether the district court erred in concluding Tuomi was not denied his right to counsel when the state court accepted Tuomi's motion to withdraw his guilty plea without first appointing him new counsel or providing him an opportunity to confer with counsel**

Tuomi asserts that under Florida law he was entitled to conflict free counsel to assist him in the drafting and filing of the Rule 3.170 motion to withdraw his

11

plea, and the trial court erred in failing to appoint him conflict-free counsel.[8]  He

maintains that, rather than withdrawing his plea, new conflict-free counsel could

have rectified the incorrect scoresheet by filing a motion to correct sentence,

pursuant to Florida Rule of Criminal Procedure 3.800.  And if conflict-free counsel

had corrected the scoresheet via a Rule 3.800 motion, Tuomi's plea would have

remained intact, and he would be serving a lesser sentence.[9]

Tuomi has not, however, established that the state court's denial of this

claim was contrary to, or involved an unreasonable application of federal law, or

was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

To establish a violation of the defendant's Sixth Amendment right to counsel based

on a conflict of interest, a defendant must demonstrate: "(a) that his defense

attorney had an actual conflict of interest, and (b) that this conflict adversely

affected his attorney's performance."  *Reynolds v. Chapman*, 253 F.3d 1337, 1342

---

[8] Tuomi maintains that there was an adversary relationship between him and his counsel because she admitted that she misadvised Tuomi to accept the negotiated plea offer of two years' imprisonment based on an incorrect criminal punishment scoresheet, and because he alleged that she coerced him into the plea.

[9] Tuomi also argues that the trial court failed to follow Florida law and the procedures for adjudicating a Rule 3.170 motion as set forth in *Schriber v. State*, 959 So. 2d 1254 (Fla. 4th Dist. Ct. App. 2007) and *Padgett v. State*, 743 So. 2d 70 (Fla. 4th Dist. Ct. App. 1999).  To the extent Tuomi's claim is based on the trial court's failure to follow Florida law and procedures, it does not present a basis for federal habeas relief.  *See, e.g.*, *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (explaining that "a habeas petition grounded on issues of state law provides no basis for habeas relief" even when "couched" in terms of federal constitutional violations).

(11th Cir. 2011) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). The "mere possibility of conflict of interest does not rise to the level of a Sixth Amendment violation." *Buenoano v. Singletary*, 74 F.3d 1078, 1086 (11th Cir. 1996). To show an actual conflict of interest, a habeas petitioner "'must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action . . .' that favors an interest in competition with that of the defendant. 'If [counsel] did not make such a choice, the conflict remained hypothetical.'" *Id.* at 1086 n.6 (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)); *see also Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (*en banc*) ("An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'" (quoting *Smith*, 815 F.2d at 1405)). "To prove adverse effect, a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." *Pegg v. United States*, 253 F.3d 1274, 1278 (11th Cir. 2001).

While Tuomi may have demonstrated the existence of a potential conflict of interest given his allegations that his trial counsel was ineffective and coerced him into taking the plea, he failed to demonstrate that his counsel had an *actual* conflict of interest that adversely affected counsel's performance. On the contrary, despite

Tuomi's allegations against his counsel, the record establishes that she filed a Rule 3.170 motion to withdraw his plea based on the incorrect scoresheet, acknowledged her own ineffectiveness in failing to realize the error, and strongly advocated at the motion hearing that Tuomi should be able to withdraw his plea. Nothing in the record suggests that Tuomi's counsel had inconsistent interests or made a choice between actions that favored her own interest over Tuomi's.[10] *See Buenoano*, 74 F.3d at 1086 n.6. Thus, Tuomi failed to show that his counsel of record at the time of his motion to withdraw his plea had an actual conflict of interest.

Tuomi maintains that a conflict and adverse effect is evident because, under the circumstances, conflict-free counsel would have sought to correct the scoresheet error via a Florida Rule 3.800 motion to correct sentence instead of a Rule 3.170 motion to withdraw plea. But Tuomi cannot show adverse effect because a Rule 3.800 motion was not a viable alternative under Florida law. Specifically, in Florida, when a defendant enters a negotiated plea based on an incorrect score sheet, any error is considered harmless and a defendant's "only avenue of relief" is to seek to withdraw the plea due to its involuntary nature under Rule 3.170. *See Ruff v. State*, 840 So. 2d 1145, 1147 (Fla. 5th Dist. Ct. App. 2003)

---

[10] Notably, although Tuomi faults his counsel for seeking to withdraw his plea, we note that in addition to his counsel's motion to withdraw the plea, Tuomi also filed his own *pro se* motion seeking to withdraw the plea.

14

("In essence, scoresheet errors are considered harmless when a sentence is the result of a negotiated plea agreement."); *Corp v. State*, 698 So. 2d 1349, 1350 (Fla. 1st Dist. Ct. App. 1997) ("[I]f appellant entered a negotiated plea bargain for the specific sentences imposed, without any conditional promise that such sentences be within the guidelines, then he would not be entitled to relief, as any scoresheet error would be harmless for purposes of rule 3.800." (collecting cases)); *see also Carter v. State*, 920 So. 2d 129, 130 (Fla. 4th Dist. Ct. App. 2006) ("When a defendant enters a negotiated plea for a term of imprisonment on the basis of an incorrectly calculated scoresheet, the sentence is not illegal if it does not exceed the statutory maximum. 'Correction' of a bargained sentence by reducing its terms [via a Rule 3.800(a) motion], as Defendant proposes, is not an appropriate remedy."); *Williams v. State*, 825 So. 2d 994, 996 (Fla. 4th Dist. Ct. App. 2002) (holding that defendant who did not want to withdraw his plea could not obtain relief to correct sentence under Rule 3.800 where the defendant entered a negotiated plea to a specified sentence which did not exceed the statutory maximum). Thus, Tuomi's counsel pursued the only form of relief available to Tuomi under the circumstances, which was to seek to withdraw his negotiated plea on the ground that it was involuntary. Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. Therefore, federal habeas

15

relief is not available, and the district court did not err in denying this claim.  *See* 28 U.S.C. § 2254(d).

**B.      Whether the district court erred in concluding Tuomi's appellate counsel was not ineffective for failing to argue he had been denied his right to counsel before withdrawing his guilty plea**

Tuomi argues that his appellate counsel was ineffective for not raising on direct appeal the Sixth Amendment conflict of interest claim discussed in subsection A.  However, as discussed above, the conflict of interest claim is not meritorious; therefore, it follows the claim would not have had a reasonable probability of success on appeal, and Tuomi's appellate counsel was not ineffective for failing to raise it.  *See Philmore*, 575 F.3d at 1264–65; *see also Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that "appellate counsel was not ineffective for failing to raise a nonmeritorious issue"); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))).  Thus, the state court's denial of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts.  Consequently, the district court did not err in denying federal habeas relief on this claim.  *See* 28 U.S.C. § 2254(d).

**C.      Whether the district court erred in concluding Tuomi's appellate counsel was not ineffective for failing to raise a claim that Tuomi did not**

16

**knowingly and voluntarily waive his right to counsel, in violation of *Faretta***

Tuomi argues that his appellate counsel rendered constitutionally ineffective assistance by failing to argue on direct appeal that the trial court failed to conduct a proper inquiry under *Faretta*, and, therefore, his waiver of counsel was not knowingly and voluntarily made.

Tuomi has not shown that the state court's decision denying this claim was contrary to, or involved an unreasonable application of, federal law.  Under the Sixth Amendment, as applied to the States through the Fourteenth Amendment, a criminal defendant has "the right to counsel at all 'critical stages' of a criminal prosecution."  *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998).  On the other hand, a criminal defendant also has a constitutional right to self-representation if he so chooses.  *Faretta*, 422 U.S. at 834–35.  A request to proceed *pro se* and a waiver of the right to assistance of counsel, however, must be "knowingly and intelligently" made.  *Id.* at 835.

*Faretta* provides that when a defendant requests to discharge counsel and to proceed *pro se*, a trial court should conduct an inquiry and make the defendant "aware of the dangers and disadvantages of self-representation, so that the record . . . establish[es] that '[the defendant] knows what he is doing and his choice is made with eyes open.'"  *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)).  "The ideal method of assuring a voluntary waiver is for the trial judge to

17

conduct a pre-trial hearing at which the defendant would be informed of the charges, basic trial procedures, and the hazards of self-representation." *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (quoting *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991)). However, while a pretrial hearing is preferred, it is merely "a means to the end," and "[t]he failure to hold a *Faretta* hearing is not error as a matter of law. If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the *Faretta* standard will be satisfied." *Id.* (quotations omitted); *see also Hooks v. State*, 286 So. 3d 163, 168 (Fla. 2019) (examining scope of a *Faretta* inquiry under Florida law, as set forth in Fla. R. Crim. P. 3.111(d),[11] and explaining that there is no requirement the court look into any specific factors "for there are no magic words under *Faretta*," and "the omission of one or more warnings . . . does not necessarily require reversal as long as it is apparent that the defendant knowingly and voluntarily waived the right to counsel" (quotations omitted)).

Here, Tuomi filed not one but two waivers of representation, asserting that he desired to represent himself and was competent to do so as he had been

---

[11] Florida Rule of Criminal Procedure 3.111(d) provides that:

A defendant shall not be considered to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make a knowing and intelligent waiver. Before determining whether the waiver is knowing and intelligent, the court shall advise the defendant of the disadvantages and dangers of self-representation.

diligently researching and preparing the case and was not suffering from any mental illness. Prior to the start of *voir dire*, the trial court stated that it needed to talk with Tuomi about his choice to proceed without a lawyer, and in response Tuomi stated "[i]t's called *Faretta*." The trial court then made Tuomi aware of the dangers and disadvantages of *pro se* representation as well as the charges against him and the potential sentence he faced. The trial court also expressly cautioned that it thought it was "a bad idea" for a defendant to proceed without a lawyer. Yet, Tuomi remained steadfast in his desire to proceed *pro se*. Thus, a *Faretta*-based challenge to the validity of his waiver of his right to counsel did not have a reasonable probability of success on direct appeal, and his appellate counsel was not ineffective for failing to raise this issue. *See Philmore*, 575 F.3d at 1264–65; *see also Chandler*, 240 F.3d at 917 (holding that "appellate counsel was not ineffective for failing to raise a nonmeritorious issue"). Accordingly, because the state court's decision was not contrary to, or an unreasonable application of *Faretta* or *Strickland*, the district court did not err in denying this claim. *See* 28 U.S.C. § 2254(d).

## VI.  CONCLUSION

In light of the foregoing, we affirm the district court's denial of Tuomi's § 2254 petition.

**AFFIRMED.**

19