[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14262

Non-Argument Calendar

_____

JOSEPH E. NICHOLS, JR.,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cv-00184-BJD-JBT

———————————

Before GRANT, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

A jury convicted Joseph Nichols, Jr. of sexual battery, simple battery, and burglary. The state trial court sentenced him to life imprisonment with a twenty-five-year minimum for the sexual battery and a concurrent life sentence for the burglary. It also imposed two concurrent 364-day jail sentences for the lesser included batteries. In this *pro se* appeal of a final order denying his petition for a writ of habeas corpus, Nichols claims ineffective assistance of appellate counsel. Nichols contends that his appellate counsel should have challenged the state trial court's admission of certain statements by Nichols to law enforcement under *Miranda* instead of under evidentiary rules. But the district court correctly found that Nichols' appellate counsel satisfied the deferential *Strickland* standard. His appellate counsel made a reasonable strategic choice when weighing the potential pitfalls of a *Miranda* argument. Accordingly, we affirm.

## I.

On April 13, 2010, Nichols sexually assaulted his friend's daughter-in-law in her home. The assault occurred at knife point while the victim's three children slept upstairs. The victim attempted to defend herself against Nichols' attack, but after a violent struggle, Nichols subdued her. He threatened to kill all the

children in the house if the victim did not submit. After the assault, Nichols departed.

The police arrested Nichols and advised him of his *Miranda* rights. Central to this appeal, Detective Thomas Marmo of the St. John's Sheriff's Department interviewed Nichols. After Detective Marmo introduced himself, Nichols made several statements against interest. Nichols stated, "Y'all got me. The bad guy's behind bars and I will be for the rest of my life." Detective Marmo read-vised Nichols of his *Miranda* rights and asked whether Nichols understood the charges against him. Nichols responded, "It really doesn't matter . . . . [I]t could be murder for all I care because I'm going down for the rest of my life anyway." Soon after, Nichols told Detective Marmo that he wished to return to his cell. Detective Marmo continued conversing with Nichols, and Nichols stated, "You've got me hook, line, and sinker for the rest of my life . . . ." Nichols again requested to return to his cell. Before Detective Marmo complied with the request, Nichols said, "[Y]ou've got me for the rest of my life," and noted that an attorney could not remedy his predicament.

The State of Florida charged Nichols by information with three counts of sexual battery and one count of burglary. Nichols moved to suppress the interview with Detective Marmo, but the trial judge denied that motion after reviewing a tape of the interview. The state trial court also denied Nichols' motion in limine to exclude four inculpatory statements made during the interview. At trial, the state introduced portions of the interview between

Detective Marmo and Nichols into evidence and brought up the interview during closing argument. A jury convicted Nichols of one count of sexual battery with a deadly weapon, two counts of simple battery (the lesser included offense of sexual battery), and the burglary as charged. Because the state trial court concluded that Nichols was a dangerous sexual felony offender, he was sentenced to life imprisonment with a twenty-five-year minimum for the sexual battery. The state trial court imposed a consecutive life sentence for the burglary and two concurrent 364-day sentences for the simple batteries.

Several appeals ensued. Nichols appealed his conviction, arguing in relevant part that the state trial court abused its discretion by admitting unduly prejudicial statements from the interview with Detective Marmo. The Fifth District Court of Appeal of Florida affirmed the conviction without opinion.

Nichols then filed a motion for state postconviction relief under Fla. R. Crim. P. 3.850, including a claim for ineffective assistance of trial counsel. After an evidentiary hearing, the state trial court denied Nichols' motion for postconviction relief. The Fifth District Court of Appeal of Florida affirmed that denial without opinion. During the pendency of his postconviction motions, Nichols also submitted a state habeas corpus petition, arguing, among other things, ineffective appellate counsel, which was summarily denied.

Seeking federal relief, Nichols filed a habeas petition in the U.S. District Court for the Middle District of Florida under 28

U.S.C. § 2254. The district court denied the petition, concluding that Nichols failed to establish that his appellate counsel was ineffective under *Strickland*, as well as a certificate of appealability. Nichols asks us to review that order, and we granted a certificate of appealability solely on the issue of whether his appellate counsel was ineffective.

## II.

We review a district court's denial of a petition for habeas corpus *de novo* and factual findings for clear error. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010). A claim of ineffective assistance of counsel is a mixed question of law and fact, subjecting it to *de novo* review. *Id.*

## III.

On appeal, Nichols claims that his appellate counsel was ineffective for not advancing a *Miranda* argument when challenging the state trial court's failure to suppress certain statements from the post-arrest interview. He contends that the failure to raise a potential *Miranda* violation deprived him of a reasonably competent attorney and prejudiced the outcome of his appeal. Thus, he posits, the district court erred in denying his habeas petition. We disagree.

### A.

A federal court may grant a writ of habeas corpus to a person convicted in state court only if a "violation of the Constitution or laws or treaties of the United States" occurred. 28 U.S.C § 2254(a).

Generally, a petitioner must exhaust state court remedies before seeking federal relief. *Id.* § 2254(b)(1)(A). Ineffective assistance of counsel in a criminal proceeding violates the Sixth Amendment and amounts to a constitutional violation that qualifies for federal habeas review. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to the *effective* assistance of counsel.") (emphasis added). When claiming ineffective assistance of counsel, a petitioner must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

We adopt a strong presumption "that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). Thus, counsel's "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A claim for ineffective assistance of appellate counsel "is governed by the same standards applied to trial counsel." *Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 795 (11th Cir. 2020). And appellate counsel need not raise "every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) superimposes a deferential lens on this framework. *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (noting that state court decisions on habeas questions should "be given the benefit of the

doubt") (quotation omitted). Under AEDPA, a federal court may grant habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Applying AEDPA deference requires us to "evaluate the highest state-court decision" that decided the claim on the merits. *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). If a state court does not explain its reasoning in denying a habeas petition, we presume that it adjudicated the claim on the merits, absent "any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). When reviewing a summary affirmance by a state court, a federal habeas court "must determine what arguments or theories supported or . . . *could have supported*" denial of habeas relief. *Id.* at 102 (emphasis added). We must then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" a prior Supreme Court decision. *Id.* at 102. Because *Strickland* and AEDPA create highly deferential standards independently, our review is "doubly" deferential when the two standards "apply in tandem." *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1265 (11th Cir. 2020). Thus, when *Strickland* and AEDPA converge in a claim for ineffective assistance of counsel, we must decide "not whether counsel's actions were reasonable,"

but "whether *there is any reasonable argument that counsel satis-fied Strickland's deferential standard.*" *Id.*

## B.

The crux of Nichols' appeal hinges on the alleged strategic misstep by his counsel on the direct appeal. There, Nichols' counsel argued that the state trial court abused its discretion by admitting unduly prejudicial statements made during the post-arrest interview with Detective Marmo. Appellate counsel contended that ambiguity inhered in statements like, "You got me for the rest of my life," because it was unclear whether Nichols was referring to the sexual assault or to his probation violation. Denying the motion in limine, so the argument goes, resulted in admission of inculpatory statements that pressured Nichols into testifying. The Fifth District Court of Appeal of Florida rejected this reasoning when it summarily affirmed Nichols' conviction. That same court also summarily denied Nichols' state habeas petition that alleged ineffective assistance of appellate counsel. In his federal habeas petition, Nichols reasserts his claim of ineffective assistance of appellate counsel. He posits that his lawyer should have challenged the state trial court's admission of the inculpatory statements under *Miranda*—Nichols suggests his requests to return to his cell constituted an invocation of his right to remain silent—instead of under evidentiary rules. *See Miranda v. Arizona*, 384 U.S. 436, 467–68, 479 (1966) ("[I]f a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent.").

1.

To succeed on a *Strickland* claim for ineffective assistance of counsel, a petitioner must first prove that "counsel's performance was deficient." *Strickland*, 466 U.S. at 687. Deficiency means that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

Though the Fifth District Court of Appeal of Florida summarily denied Nichols' state habeas petition without opinion, we treat that decision as an adjudication on the merits, which entitles it to AEDPA deference. *Harrington*, 562 U.S. at 99. Because *Strickland* and AEDPA apply in tandem, we must determine what arguments *could have supported* the state court's denial of habeas relief. *Id.* at 102. Nichols' claim of ineffective assistance of appellate counsel will fail if there is "any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Jenkins*, 963 F.3d at 1265 (alteration omitted).

First, even if a *Miranda* violation occurred because Nichols was sleep-deprived and under the influence of pain medication, as he maintains, Nichols did not argue these points in either his motion to suppress or motion in limine, precluding his lawyer from raising them on appeal. *See Tillman v. State*, 471 So. 2d 32, 34–35 (Fla. 1985); *see also Steinhorst v. State*, 412 So. 2d. 332, 338 (Fla. 1982) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the

objection, exception, or motion below."). His appellate counsel was not ineffective for failing to argue foreclosed claims.

Second, Nichols mentioned in his motion to suppress that he "affirmatively stated" that he wished to cease speaking with Detective Marmo. But his primary argument in that motion was that the state trial court should suppress inculpatory statements made *after he requested to return to his cell*, not after his first request to terminate the interview. Again, the *Miranda* arguments made by trial counsel in the motion to suppress limited the panoply of challenges available at the appellate stage. *See id.* We cannot fault appellate counsel for refusing to advance claims—like a broader *Miranda* violation—that he was barred from raising.

The only issue for us to decide is whether appellate counsel was deficient for failing to reargue the *Miranda* violation to suppress statements Nichols made *after requesting to return to his cell*. This argument has something to commend it. At least two Florida courts have noted that an arrestee's demand to return to his cell terminates a custodial interrogation. *See, e.g.*, *Shorter v. State*, 98 So. 3d 685, 689 (Fla. Dist. Ct. App. 2012) (observing that an arrestee's "request to return to his jail cell" provides "sufficient clarity" for "any reasonable law enforcement officer" to know that the arrestee "desire[s] to terminate the interview"); *Scott v. State*, 151 So. 3d 567, 578 (Fla. Dist. Ct. App. 2014) (same). But both *Shorter* and *Scott* were decided after Nichols' direct appeal was denied. Reasonably effective representation does not require predicting

developments in the law. *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1334 (11th Cir. 2016).

Notably, Nichols made inculpatory statements *before* asking to return to his cell. Thus, it was plausibly a better strategy for appellate counsel to argue that the state trial court should have suppressed these statements on evidentiary grounds rather than under *Miranda*. If appellate counsel succeeded with the evidentiary argument, *every* inculpatory statement would have been suppressed. Conversely, a *Miranda* argument would not have excluded Nichols' prejudicial statement made *before* he asked to return to his cell (a version of "You got me for the rest of my life."). Admittedly, Nichols' lawyer could have raised both evidentiary and *Miranda* arguments on the direct appeal, but there is no requirement "to raise every nonfrivolous issue that a defendant wants raised" if appellate counsel makes a professional judgment "not to present those points." *Id.* at 1332.

Nichols has not established that his appellate counsel "made errors so serious" as to violate the Sixth Amendment. *Strickland*, 466 U.S. at 687. Accordingly, counsel's performance was not deficient.

### 2.

The second *Strickland* element requires showing that counsel's "deficient performance" prejudiced the defense. *Id.* at 687. The prejudice prong of Strickland "asks whether it is "'reasonably likely' the result would have been different" but for counsel's

ineffectiveness. *Harrington*, 562 U.S. at 111 (quoting *Strickland*, 466 U.S. at 696). That is, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. The two-part *Strickland* test is conjunctive—"both parts . . . must be satisfied in order to show a violation of the Sixth Amendment . . . ." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Several arguments could have supported the state court's summary denial of Nichols' habeas petition on the prejudice ground, none of which conflict with a prior Supreme Court decision. *Harrington*, 562 U.S. at 102. For example, the state court may have concluded that, even if Nichols' *Miranda* argument had been well-founded, it would not have warranted a reversal of his conviction. "The erroneous admission of statements obtained in violation of *Miranda* rights is subject to harmless error analysis." *Mansfield v. State*, 758 So. 2d 636, 644 (Fla. 2000) (quoting *Caso v. State*, 524 So. 2d 422, 425 (Fla. 1988)). Here, Nichols' *Miranda* argument would have warranted the exclusion of only some of the inculpatory statements that he made to the officers. And his *Miranda* argument would have affected none of the other, substantial evidence of his guilt. It was not objectively unreasonable to conclude that his counsel's failure to raise the Miranda argument on appeal did not prejudice him.

## IV.

The district court is **AFFIRMED.**